IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
January 8, 2020 Session

## STATE OF TENNESSEE v. JOSE HERNANDEZ

**Appeal from the Criminal Court for Shelby County**
No. 18-01552          James M. Lammey, Judge

_____

### No. W2019-00154-CCA-R3-CD

_____

On November 9, 2018, the Defendant, Jose Hernandez, pleaded guilty to driving under the influence, a Class A misdemeanor. The trial court sentenced him to 11 months and 29 days in a workhouse, which the court suspended to 11 months and 29 days on supervised probation. The Defendant argues on appeal that: 1) the trial court imposed supplemental probation conditions that were preempted by federal law; 2) the Defendant's supplemental probation conditions did not provide sufficient notice of what was expected of him on probation; and 3) the trial court violated the Defendant's due process rights by failing to give notice of his probation violation and a revocation hearing. After thorough review, we reverse and remand for a probation revocation hearing.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed in Part, Reversed in Part, and Remanded**

ALAN E. GLENN, J., delivered the opinion of the court, in which THOMAS T. WOODALL, J., joined. NORMA MCGEE OGLE, J., concurring in results only.

Eric J. Monteirth, Memphis, Tennessee, for the appellant, Jose Hernandez.

Herbert H. Slatery III, Attorney General and Reporter; Katharine K. Decker, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Jamie Kidd, Patrick Newport, and Ryan Thompson, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

## FACTS

At the plea submission hearing, the State recited the facts of the case. On April 10, 2017, Tennessee Highway Patrol Officer Brandon Rogers noticed a vehicle "drifting within its lanes, driving over multiple times" on Summer Avenue in Shelby County. Officer Rogers conducted a traffic stop at approximately 2:30 a.m. and identified the Defendant as the driver of the vehicle. The Defendant did not have a driver's license, smelled like alcohol, had "red watery eyes[,]" was "unsteady on his feet[,]" and was unable to complete parts of the Field Sobriety Test. Officer Rogers conducted a "breath test[,]" at approximately 3:30 a.m., which indicated that the Defendant had a blood alcohol concentration of .127. The Defendant stipulated to the State's recitation of facts and affirmed the announcement of the sentence of 11 months 29 days probation, a $600 fine, $15 to the Traumatic Brain Injury fund, and the revocation of his driver's license for one year. Defense counsel and the Defendant affirmed that they had discussed the conditions of a supplemental probation order, requiring him, among other things, to report to immigration authorities and update his address with immigration authorities. The trial court placed the Defendant on the docket for December 10, 2018, at which time he was to provide the trial court "proof that [he'd] abided by th[e] supplemental probation order."

At the December 10, 2018 hearing, defense counsel informed the trial court that the Defendant had been directed by immigration authorities to go to their office in order to comply with the supplemental probation conditions, and the trial court consequently reset the hearing for December 13, 2018, in order to give the Defendant "time to abide by" the supplemental probation conditions. At the December 13, 2018 hearing, defense counsel informed the trial court that he had referred the Defendant to an immigration attorney to help comply with the supplemental probation conditions. Defense counsel was unsure whether the Defendant had registered with the immigration authorities, and the court therefore wanted to determine whether the Defendant's fingerprints were in the immigration authorities' database, noting that they were otherwise unsure if he was in the database because of his "popular name" and multiple social security cards. The court arranged to have the Defendant fingerprinted and accordingly reset the case for January 7, 2019.

At the January 7, 2019 hearing, the prosecutor informed the court that the Defendant had not registered with immigration authorities. Defense counsel confusingly told the court that the Defendant had received advice from an immigration attorney both to turn himself in and not to turn himself in. Defense counsel requested that the court again reset the case for January 24, 2019, so that the Defendant could register with immigration authorities. The prosecutor informed the trial court that she believed the Defendant's failure to register with immigration authorities constituted a "valid basis" to revoke his probation. The prosecutor also told the trial court that she had "been told by two different agents [] that [the Defendant]'s not in the system at all and that they can confirm that he has not reported

and they have no record of him," adding that he had not "abided by Your Honor's instruction to go report and that they have no record of him."

Defense counsel agreed with the trial court, saying "if [the Defendant] hadn't done it on the 24th he needs to go into custody 'cause that's what I told him if this continued, he's going into custody the next time." Following this discussion, defense counsel questioned whether it was "necessary to have a hearing of some type[,]" and the prosecutor stated that "[t]he violation would be filed and then the case would be set on the docket." The trial court responded that it "d[id]n't think it's necessary." On January 7, 2019, the trial court entered a written order stating in its entirety that the "Defendant is in violation of this court's order to report to ICE as part of probation. As such[,] [the] Defendant is in violation of probation[,] and probation is hereby revoked."

The trial court put the Defendant's case on the docket for January 8. At those proceedings, the trial court told the Defendant that "[p]art of [your] probation was that you were to get right with the Federal government. . . . and you did not do so. Therefore, you're in violation of probation and therefore . . . I'm revoking your probation. You're to serve . . . the remainder of your time." The trial court then realized that defense counsel was not present when it informed the Defendant that he was revoking his probation. When defense counsel later appeared, defense counsel told the trial court that it did not need to repeat what it had previously told the Defendant when counsel was not present.

On January 8, 2019, the trial court entered an "Order Revoking Suspension of Sentence and Directing Execution of Judgment of Conviction." The Defendant filed a timely notice of appeal on January 23, 2019. On March 21, 2019, another hearing was held, during which defense counsel informed the court that the Defendant was in compliance with his probation condition to register with immigration authorities. The trial court reset the case for April 22, 2019, so that defense counsel could provide evidence of the Defendant's compliance. There is no indication in the record that such hearing was ever held.

## ANALYSIS

The Defendant argues on appeal that: 1) the trial court imposed supplemental probation conditions that were preempted by federal law; 2) the Defendant's supplemental probation conditions did not provide sufficient notice of what was expected of him on probation; and 3) the trial court violated the Defendant's due process rights by failing to give notice of his probation violation and a revocation hearing.[1] The State responds that the supplemental conditions were not preempted by federal law, he was provided notice of

---

[1] For the sake of clarity, we have reordered the Defendant's issues raised on appeal.

what was expected of him on probation, and he was given notice and a probation revocation hearing. While we agree that the probation conditions are not preempted by federal law and provided notice of what was expected of the Defendant, we cannot conclude that the Defendant's due process rights were satisfied in the revocation of his probation.

## I. Legality of Supplemental Probation Conditions

The Defendant argues that the Supremacy Clause of the United States Constitution preempted the trial court from requiring the Defendant to comply with federal immigration laws, citing Arizona v. United States, 546 U.S. 387 (2012), in support of this assertion. The State responds that the supplemental probation conditions were not preempted because they did not add a new penalty, did not constitute a state law, and did not "intrude in any way on the autonomy" of immigration authorities. We agree with the State.

The Supremacy Clause of the United States Constitution states that the laws of the United States "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or the Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. In Arizona v. United States, the Supreme Court explained that there are two circumstances where state law must give way to federal law: "First, the States are precluded from regulating conduct in a field that Congress, acting within its proper authority, has determined must be regulated by its exclusive governance." 546 U.S. at 399. "Second, state laws are preempted when they conflict with federal law." Id. The Supreme Court found that the state of Arizona had violated the Supremacy Clause by creating a "new state misdemeanor" and adding "a state-law penalty for conduct proscribed by federal law" regarding carrying an alien registration document. Id. at 400.

The Defendant argues that like the State of Arizona, the trial court "sought to add additional penalties for violations of federal law through exercising state law authority." He argues that he was subject to "additional punishment" for violating 8 U.S.C. §§ 1302(a) and 1305(a). Section 1302(a) states that

> It shall be the duty of every alien now or hereafter in the United States, who (1) is fourteen years of age or older, (2) has not been registered and fingerprinted under section 1201(b) of this title or section 30 or 31 of the Alien Registration Act, 1940, and (3) remains in the United States for thirty days or longer, to apply for registration and to be fingerprinted before the expiration of such thirty days.

U.S.C. § 1302(a). Section 1305(a) requires that

Each alien required to be registered under this subchapter who is within the United States shall notify the Attorney General in writing of each change of address and new address within ten days from the date of such change and furnish with such notice such additional information as the Attorney General may require by regulation.

8 U.S.C. § 1305(a).

We are unable to find any Tennessee cases directly related to the instant issue. However, as noted by the State, People v. Laufasa, 115 Cal.Rptr.3d 318 (Sept. 9, 2010), rev. denied (Dec. 21, 2010), provides persuasive authority. In Laufasa, the defendant challenged the imposition of a special probation condition that he not reenter the United States illegally if he were deported. Id. at 320. He argued that such a condition would be a state penalty for violation of a federal law. Id. The court disagreed, finding that the probation condition "simply echoe[d] existing federal requirements pertaining to Immigration[.]" Id. (citation omitted). Like the court in Laufasa, we agree with the State that the supplemental probation conditions in the instant case "simply echo" existing federal requirements. As proscribed by law, the Defendant was already required to register with immigration authorities and to keep them abreast of any address changes. See 8 U.S.C. §§ 1302(a), 1305(a). The trial court's supplemental condition that he follow a law he was already supposed to be following[2] is markedly different than the state of Arizona creating new state crimes or new state penalties with regard to federal law. The trial court merely emphasized that the Defendant should follow the federal laws he was already required to follow by virtue of being in the United States. Thus, the supplemental probation conditions were not preempted by federal law and did not violate the Supremacy Clause.

## II. Due Process Rights in Supplemental Probation Conditions

The Defendant argues that it is "implicit in the due process requirement of notice" that a "probationer should have notice of what is expected of him while on probation." He further asserts that his supplemental probation requirements were "unclear and vague" to both the Defendant and the trial court. The State responds that the Defendant has waived this issue because he has not "provided any law delineating his substantive due process rights in the context of his probation conditions." The State also responds that the supplemental probation conditions were "clearly stated" and relayed what "was expected"

---

[2] We note that the first condition of probation in all preprinted probation forms that probationers must sign, including the form that the Defendant signed, typically reads: "I will obey the laws of the United States, or any State in which I may be, as well as any municipal ordinances." The Defendant's argument that the trial court requiring him to follow federal law as a condition of probation is illegal would necessarily imply that no trial court could revoke any defendant's probation based on the defendant's violation of any federal law.

- 5 -

of the Defendant, regardless of whether the trial court knew "what steps the federal law required for compliance[.]"  We agree with the State.

The Defendant argues that his "substantive due process rights were violated because the trial court had no meaningful idea of" how the Defendant could comply with the probation requirement to register with immigration authorities as is required by federal law.  See 8 U.S.C. § 1305(a).  However, as noted by the State, the trial court clearly informed the Defendant that he was expected to register with immigration authorities per 8 U.S.C. § 1305(a), regardless of whether the trial court knew exactly the steps needed to do so.  The Defendant has failed to cite to any relevant legal authority explaining how the trial court had a duty to outline exactly what steps he needed to follow to comply with the probation conditions or how the court's inability to do so violated his due process rights, thereby waiving this claim.  Tenn. Crim. Ct. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court."); see also Tenn. R. App. P. 27(a)(7).

### III. Due Process Rights in Revocation Hearing

A trial court is granted broad authority to revoke a suspended sentence and to reinstate the original sentence if it finds by the preponderance of the evidence that the defendant has violated the terms of his or her probation and suspension of sentence.  Tenn. Code Ann. §§ 40-35-10, -311 (2010).  The revocation of probation lies within the sound discretion of the trial court.  State v. Shaffer, 45 S.W.3d 553, 554 (Tenn. 2001); State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991); State v. Stubblefield, 953 S.W.2d 223, 226 (Tenn. Crim. App. 1997); State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991).  To show an abuse of discretion in a probation revocation case, "a defendant must demonstrate 'that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred.'"  State v. Wall, 909 S.W.2d 8, 10 (Tenn. Crim. App.1994) (quoting State v. Delp, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980)).  "The proof of a probation violation need not be established beyond a reasonable doubt, but it is sufficient if it allows the trial court to make a conscientious and intelligent judgment."  Harkins, 811 S.W.2d at 82 (citing State v. Milton, 673 S.W.2d 555, 557 (Tenn. Crim. App. 1984)).

A defendant at a probation revocation proceeding is not entitled to the full array of procedural protections associated with a criminal trial.  See Black v. Romano, 471 U.S. 606, 613 (1985); Gagnon v. Scarpelli, 411 U.S. 778, 786-90 (1973).  However, such a defendant is entitled to the "minimum requirements of due process," including: (1) written notice of the claimed violation(s) of probation; (2) disclosure to the probationer of evidence against him or her; (3) the opportunity to be heard in person and to present witnesses and documentary evidence; (4) the right to confront and cross-examine adverse witnesses

(unless good cause is shown for not allowing confrontation); (5) a neutral and detached hearing body, members of which need not be judicial officers or lawyers; and (6) a written statement by the fact-finder regarding the evidence relied upon and the reasons for revoking probation. Gagnon, 411 U.S. at 786; Morrissey v. Brewer, 408 U.S. 471, 489 (1972).

Despite the State's arguments to the contrary, it is clear from the record that the Defendant was not remotely afforded a probation revocation hearing. In fact, when defense counsel questioned whether a hearing needed to be conducted, the trial court responded that a hearing was not "necessary." The Defendant did not present any evidence. In fact, the only thing the trial court considered was the prosecutor informing the trial court she had "been told by two different agents [] that [the Defendant]'s not in the system at all and that they can confirm that he has not reported and they have no record of him," and defense counsel agreeing that the Defendant had not registered with immigration authorities. The Defendant's due process rights were undoubtedly violated. We, therefore, reverse the revocation of probation and remand for a probation revocation hearing in which the Defendant is afforded the minimum due process rights as outlined above.[3]

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the trial court's supplemental probation conditions, reverse the Defendant's probation revocation, and remand for a revocation hearing consistent with this opinion.

_____
ALAN E. GLENN, JUDGE

---

[3] We recognize that this issue upon remand may be moot. Nonetheless, such remand is necessary to afford consistency to probation revocation hearings.